UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DWG PROPERTY SERVICES CO., LLC,

                                                 CASE NO:

      Plaintiff,

vs.

MADISON PROPERTIES USA, LLC,
CROSS COUNTY OWNER, LLC,
COLEMAN MARKETPLACE, LLC. n/k/a
COLEMAN MARKETPLACE OF DELAWARE, LLC,
And RS EQUITY HOLDINGS, LLC.,

      Defendants.

_____/

## COMPLAINT

      Plaintiff, DWG Property Services Co., LLC., by and through its undersigned counsel and pursuant to applicable Federal Rules of Civil Procedure, hereby files this Complaint against Defendants, Madison Properties USA, LLC, Cross County Owner, LLC, Coleman Marketplace, LLC and RS Equity Holdings, LLC., and alleges as follows:

### GENERAL ALLEGATIONS

      1.     Plaintiff, DWG Property Services Co., LLC (hereinafter "DWG"), is a foreign corporation authorized to do business in Florida, having its principal place of business in Durham, North Carolina; its members are natural persons, residents of North Carolina and domiciled in North Carolina.

      2.     Defendant, Madison Properties USA, LLC. (hereinafter "Madison"), is a foreign corporation authorized to do business in Florida, having its principal place of business in Brooklyn, New York; its members are natural persons, residents of New York and

domiciled in New York. Madison is the Managing Agent for several shopping center properties in Florida, including those that are the subject of this action and was the party primarily responsible with directing the work of Plaintiff at those properties in Florida.

3.      Defendant, Cross County Owner, LLC. (hereinafter "Cross County"), is a foreign limited liability company authorized to do business in Florida, having its principal place of business in Brooklyn, New York; its members are natural persons, residents of New York and domiciled in New York. Cross County owns property in West Palm Beach, Florida that is the subject of one of the Service Agreements at issue in this action.

4.      Defendant, Coleman Marketplace, LLC. n/k/a Coleman Marketplace of Delaware, LLC (hereinafter "Coleman"), is a limited liability company having its principal place of business in Brooklyn, New York; its members are natural persons, residents of New York and domiciled in New York.

5.      Defendant, RS Equity Holdings, LLC. (hereinafter "RS Equity"), is a foreign limited liability company authorized to do business in Florida and having its principal place of business in Brooklyn, New York; its members are natural persons, residents of New York and domiciled in New York. RS Equity owns property in Pasco County, Florida that is the subject of one of the Service Agreements at issue in this action.

6.      Venue in this action is proper in the United States District Court, Middle District of Tampa, Florida, because there is a dispute between citizens of different states with an amount in controversy that is greater than $75,000.00 and the claim accrued in part in Pasco County, Florida.

7.     All conditions precedent to be performed by DWG have occurred, been waived, or excused.

8.     DWG has retained the undersigned attorneys to represent it in this action and is obligated to pay them a reasonable fee for their services.

### COUNT I - BREACH OF CONTRACT
### (Against Madison Properties)

9.     DWG realleges and incorporates herein by reference paragraphs 1 through 8 above as if fully set forth herein.

10.     Defendant Madison Properties, entered into several Service Agreements and Contracts with DWG (hereinafter "Service Agreements") for DWG to perform maintenance and construction services at properties Defendant Madison Properties managed. A copy of the Service Agreements at issue in this action are attached hereto as Composite Exhibit "A" and incorporated herein by reference.

11.     In reliance on the executed Service Agreements, DWG furnished all labor, supplies and materials to perform all maintenance and construction services required for each property.

12.     Thereafter, DWG invoiced Defendant, Madison Properties, for the services. A copy of the Aged Invoice Report is attached hereto as Exhibit "B" and incorporated herein by reference.

13.     Defendant Madison Properties, has breached the terms of the Service Agreements by failing to make payment for the labor, supplies and materials in accordance with the Service Agreements and Aged invoice Report attached as Exhibits "A" and "B".

3

14.     As a direct and proximate result of Defendant Madison Properties' breaches as alleged above, DWG has suffered damages.

15.     Defendant Madison Properties is presently indebted to DWG in the principal amount of $85,363.67[1] together with interest from October 9, 2019.

WHEREFORE, Plaintiff, DWG Property Services Co., LLC. demands a judgment against Defendant Madison Properties USA, LLC., for the principal sum of Eighty Five Thousand Three Hundred Sixty Three Dollars and 67/100 ($85,363.67), together with accrued interest, court costs, attorneys' fees and such other relief as the Court deems proper.

## COUNT II - OPEN ACCOUNT
### (Against Madison Properties)

16.     DWG realleges and incorporates herein by reference paragraphs 1 through 8 above as if fully set forth herein.

17.     Defendant Madison Properties and DWG had an account and a series of transactions between them.

18.     Defendant Madison Properties, owes DWG, the sum of $85,363.67 that is due with interest since October 9, 2019 according to the Aged Invoice Report is attached hereto as Exhibit "B".

WHEREFORE, Plaintiff, DWG Property Services Co., LLC., demands a judgment against the Defendant Madison Properties USA, LLC. for damages in the amount Eighty Five

---

[1] Since the issuance of the Exhibit B Aging Report, Defendant Madison Properties has made two payments which reduce the amount reflected in the Exhibit B Aging Report.

Thousand Three Hundred Sixty Three Dollars and 67/100 ($85,363.67), plus interest, costs and such other further relief as this court deems just and proper.

### COUNT III – UNJUST ENRICHMENT
### (Against Defendant, Cross County)

19.     DWG realleges and incorporates herein by reference paragraphs 1 through 8 above as if fully set forth herein.

20.     DWG conferred a benefit upon Defendant Cross County, generally consisting of labor, supplies and materials to perform the all Landscape Maintenance to the property owned by Defendant, Cross County.

21.     Defendant Cross County requested the benefit or knowingly and voluntarily accepted it.

22.     Defendant Cross County appreciated the benefit and accepted and retained the benefit without paying the value thereof.

23.     Under the circumstances, it would be inequitable for Defendant Cross County to retain the benefit without paying the value thereof.

24.     The total reasonable value of the materials, work, labor, and services performed by DWG for Defendant, Cross County is Thirteen Thousand Seven Hundred Thirteen Dollars and 42/100 ($13,713.42).

25.     There remains unpaid a total indebtedness to DWG for work, labor and services performed by DWG for Defendant, Cross County is Thirteen Thousand Seven Hundred Thirteen Dollars and 42/100 ($13,713.42) but notwithstanding DWG's demand for payment, this amount still remains due and owing.

WHEREFORE, Plaintiff, DWG Property Services Co., LLC, requests a judgment against the Defendant, Cross County, for Thirteen Thousand Seven Hundred Thirteen Dollars and 42/100 ($13,713.42) and for interest, costs, and such other further relief as this court deems just and proper.

## COUNT IV – UNJUST ENRICHMENT
### (Against Defendant, Coleman)

26.    DWG realleges and incorporates herein by reference paragraphs 1 through 8 above as if fully set forth herein.

27.    DWG conferred a benefit upon Defendant Coleman, generally consisting of labor, supplies and materials to perform the all Landscape Maintenance to the property owned by Defendant, Coleman.

28.    Defendant Coleman requested the benefit or knowingly and voluntarily accepted it.

29.    Defendant Coleman appreciated the benefit and accepted and retained the benefit without paying the value thereof.

30.    Under the circumstances, it would be inequitable for Defendant Coleman to retain the benefit without paying the value thereof.

36.    The total reasonable value of the materials, work, labor, and services performed by DWG for Defendant, Coleman is Fifteen Thousand Seven Hundred Ninety-Nine Dollars and 00/100 ($15,799.00).

31.    There remains unpaid a total indebtedness to DWG for work, labor and services performed by DWG for Defendant, Coleman is Fifteen Thousand Seven Hundred

Ninety-Nine Dollars and 00/100 ($15,799.00) but notwithstanding DWG's demand for payment, this amount still remains due and owing.

WHEREFORE, Plaintiff, DWG Property Services Co., LLC, requests a judgment against the Defendant, Coleman Marketplace, LLC. n/k/a Coleman Marketplace of Delaware, LLC, for Fifteen Thousand Seven Hundred Ninety-Nine Dollars and 00/100 ($15,799.00) and for interest, costs, and such other further relief as this court deems just and proper.

## COUNT V – UNJUST ENRICHMENT
### (Against Defendant, RS Equity)

32      DWG realleges and incorporates herein by reference paragraphs 1 through 8 above as if fully set forth herein.

33.      DWG conferred a benefit upon Defendant RS Equity, generally consisting of labor, supplies and materials to perform the all Landscape Maintenance to the property owned by Defendant, RS Equity.

34.      Defendant RS Equity requested the benefit or knowingly and voluntarily accepted it.

35.      Defendant RS Equity appreciated the benefit and accepted and retained the benefit without paying the value thereof.

36.      Under the circumstances, it would be inequitable for Defendant RS Equity to retain the benefit without paying the value thereof.

37.      The total reasonable value of the materials, work, labor, and services performed by DWG for Defendant, RS Equity is Fifty-Five Thousand Eight Hundred Fifty One Dollars and 25/200.00 ($55,851.25).

7

38.    There remains unpaid a total indebtedness to DWG for work, labor and services performed by DWG for Defendant, RS Equity is Fifty-Five Thousand Eight Hundred Fifty One Dollars and 25/200.00 ($55,851.25) but notwithstanding DWG's demand for payment, this amount still remains due and owing.

WHEREFORE, Plaintiff, DWG Property Services Co., LLC, requests a judgment against the Defendant, RS Equity Holdings, LLC, for Fifty-Five Thousand Eight Hundred Fifty One Dollars and 25/200.00 ($55,851.25) and for interest, costs, and such other further relief as this court deems just and proper.

Dated this 29th day of December, 2020.

                                            **WALTERS LEVINE LOZANO &**
                                            **DEGRAVE**
                                            601 Bayshore Boulevard, Suite 720
                                            Tampa, Florida 33606
                                            Phone:        (813) 254-7474
                                            Facsimile:    (813) 254-7341
                                            Attorneys for Plaintiff


                                            _/s/ Heather A. DeGrave_
                                            Heather A. DeGrave, Esquire
                                            Florida Bar No. 0756601
                                            Trial Counsel
                                            hdegrave@walterslevine.com
                                            601 Bayshore Boulevard, Suite 720
                                            Tampa, Florida 33606
                                            (813) 254-7474 (telephone)
                                            Attorneys for Plaintiff

8

Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075

Generated on: March 19, 2020

Signed On: https://docs.madisonprop.com/

# Madison Properties - Contract - Rick Swinarski

## SERVICE AGREEMENT

THIS SERVICE AGREEMENT ("Agreement") is made as of March 19, 2020, between the Contractor and the Owner listed below for services to be performed at the Property listed below and as further identified on "Exhibit A" attached hereto.

### ARTICLE I
### AGREEMENT DATA

**PROPERTY:** Cross County Plaza

**PROPERTY ADDRESS:** 4288 Okeechobee Blvd West Palm Beach Florida 33409

**OWNER:** Cross County Owner LLC
(Legal Entity Name)

**MANAGING AGENT:** Madison Properties USA LLC
(Management Company)

**ADDRESS OF MANAGING AGENT:** 3611 14th Avenue, Suite 552, Brooklyn, NY 11218

**CONTRACTOR:** DWG Property Services Co., LLC

**CONTRACTOR'S ADDRESS:** PO Box 12073
Durham, NC 27709
United States

**CONTRACTOR'S TELEPHONE NUMBER:** (984) 888-6429

**CONTRACTOR'S REPRESENTATIVE:** Rick Swinarski

**CONTRACTOR'S FEDERAL I.D. NUMBER:** 823833095

**COMMENCEMENT DATE:** 04/01/2020

**TERMINATION DATE:**    11/30/2020    (subject to earlier termination as hereinafter set forth).



Composite Exhibit A

**PAYMENTS:** Owner shall pay the amount as detailed on Exhibit B attached hereto, in arrears, payable within forty-five (45) days after Owner's receipt of an invoice therefore, together with all other documentation required in Article III below, with any partial, initial or final month prorated, except as otherwise provided as follows:

Net 30

The information in the foregoing Agreement Data is incorporated and made a part of this Agreement, if there is a conflict between this information and the remainder of the Agreement, the foregoing information in this Article I shall control. The amounts to be paid by Owner to Contractor set forth on Exhibit B hereto include any and all labor, materials, supplies, costs and expenses incurred or to be incurred by Contractor in connection with the performance and completion of the Services. Contractor shall not exceed the amounts specified on Exhibit B hereto unless (a) cause is shown to Owner for the extra time and expense required, and (b) such excess amounts are expressly approved in writing in advance by Owner.

ARTICLE II
TERM AND CANCELLATION

**Section 2.01. Term.** Unless otherwise canceled pursuant to the terms of this Agreement, the term of this Agreement shall be from the Commencement Date set forth in Article I to the Termination Date set forth in Article I. Thereafter, until cancelled by either party hereto, this Agreement shall continue and remain in full force and effect on a month-to-month basis.

**Section 2.02. Cancellation.** Owner shall have the right, in its sole discretion, to cancel and terminate this Agreement, with or without cause and without cost, payment or penalty, at any time upon five (5) days prior written notice to Contractor. If this Agreement is cancelled and terminated pursuant to this Section 2.02, Contractor shall be paid for Services satisfactorily performed prior to the effective date of cancellation/termination.

**Section 2.03. Property Sale.** In the event the Property is sold or in any way conveyed to new ownership, Owner may, at its election on the effective date of sale: (a) assign this Agreement to the new owner of the Property, or (b) immediately terminate this Agreement without cost, payment or penalty.

ARTICLE III
COMPENSATION

**Section 3.01. Timing of Payments.** During the term of this Agreement or until sooner terminated, Owner shall pay Contractor for the Services set forth herein the amount or amounts and at that time or times set forth in Article I. If no other time for payment is specified in this Agreement, payments shall be made monthly in arrears and within forty-five (45) days after receipt of appropriate billing from Contractor, together with all other documentation required within this Article. All invoices should be sent to the mailing address as noted in Article I above.

**Section 3.02. Partial Payment.** Contractor shall submit monthly invoices to Owner for Services performed in accordance with this Agreement. Said invoices shall be accompanied by, at Owner's request, the following: (a) an original, executed and unconditional (except for receipt of payment for Services and materials to which such lien waiver relates) Contractor's lien waiver for work performed to date accompanied by Contractor's sworn statement setting forth in detail all subcontractors and material suppliers with whom Contractor has contracted, their addresses, work or materials to be furnished, amounts of the contracts, amounts paid to date, amounts of current payments and balances due; and (b) original, executed and unconditional (except for receipt of payment



Composite Exhibit A

Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075          Generated on: March 19, 2020

for Services and materials to which such lien waivers relate) lien waivers to date from all subcontractors and material suppliers who performed work for which payment is requested.

**Section 3.03.  Final Payment**.  Upon completion of all Services, Contractor shall submit its request for final payment which shall be accompanied by, at Owner's request, Contractor's final, original, executed and unconditional lien waiver and sworn general contractor's statement and all subcontractors' final, original, executed and unconditional lien waivers not previously provided to Owner.

**Section 3.04.  Contest**.  No payment shall be due and/or payable by Owner hereunder unless and until Contractor complies with the provisions of this Article III.  Notwithstanding anything contained in this Agreement to the contrary, if Owner contests all or any portion of any invoice, Owner shall be required to pay only the portion of such invoice not contested by Owner.  Any contested portion of such invoice shall not be payable by Owner until any disagreement between Owner and Contractor with respect thereto is resolved and a revised invoice is submitted to Owner by Contractor reflecting the appropriate adjustments agreed to, by the parties.  Contractor may be notified by the Owner of any contest by email, facsimile or by regular U.S.  Mail.

ARTICLE IV
CONTRACTOR'S DUTIES

**Section 4.01.  General**.  Contractor shall furnish all labor, supplies, materials and equipment to perform the Services at the time or times and as further specified and described in Exhibit C (attached hereto and incorporated by this reference).  The Services shall be performed diligently and in a good, professional and first class manner with good quality supplies, materials, equipment and workmanship.  Contractor warrants to Owner that all Services shall be performed in a safe, good and workmanlike manner, and that the Services, including related materials furnished hereunder, shall conform to all laws, statutes, ordinances, codes, rules and requirements applicable to the Property and/or the Services, and further warrants that the Services shall be delivered free from all liens and encumbrances whatsoever and that use of the Services shall not infringe any patents, copyrights or other proprietary rights.  All warranties shall survive inspection, acceptance and payment.  Services not meeting the warranties shall, at the Owner's option, be performed again by Contractor at no cost to Owner.

**Section 4.02.  Supervision**.  Contractor shall be responsible for the supervision and direction of its employees and any approved subcontractors, suppliers and materialmen performing the Services and shall, if needed or if Owner shall request, provide supervisory personnel on the Property acceptable to Owner to carry out this responsibility.  Periodic inspections will be conducted by any designated supervisor of Contractor to ensure that all Services hereunder are properly performed.  Contractor will inform Owner of the name of such supervisor responsible for the Services and the supervisor shall have the authority to act as Contractor's agent in Contractor's absence.  Contractor agrees to only employ employees with no criminal record and no evidence of illegal drug use.

**Section 4.03.  Equipment**.  Unless otherwise provided in Exhibit C, Contractor shall provide all equipment and supplies necessary and/or appropriate for the performance and completion of the Services in compliance with the terms and provisions of this Agreement.  All such equipment and supplies shall be of first quality only and no additional charge shall be made by Contractor for this requirement.  Contractor shall provide such equipment and supplies as appropriate, in the professional opinion of Contractor, to perform the Services in the most efficient and safest manner possible.  Contractor shall only use the equipment and supplies for their intended uses, and shall discontinue use of any product which is inappropriate for its designated use or as directed by Owner; provided, however, that the right of the Owner to prohibit use of a product shall not relieve Contractor of its requirement to exercise its professional judgment.



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075                    Generated on: March 19, 2020

**Section 4.04.  Employees**.  Contractor and Owner agree that Contractor accepts sole liability for compliance with all laws, statutes, ordinances, codes, and governmental rules and regulations related to Contractor's employees and their employment, including, without limitation, such items as workers' compensation insurance coverage, unemployment insurance, social security tax withholdings, withholding for any and all government taxes, OSHA requirements, ERISA requirements, Fair Labor Standards Act requirements, work safety rules, etc., as such regulations may apply to Contractor's employees used in providing the Services at the Property. Contractor will remove from its work force assigned to the Property any employees whose presence at the Property is deemed to be detrimental to the best interests of the Property.  Contractor agrees at all times to remain in strict compliance with all terms, provisions, regulations and rulings relative to the Immigrations Reform and Control Act of 1986 ("IRCA"), as may be amended.  All employees of Contractor assigned to the Property will have had their identity and eligibility for work within the United States properly verified.  Within three (3) days of receipt of written request from Owner, Contractor shall provide Owner with copies of the I-9 form or such other documentation as may be appropriate to satisfy Owner as to Contractor's compliance with IRCA.  Contractor shall comply with all applicable governmental regulations and laws in the hiring, supervision and termination of its employees.  Without limiting the foregoing, Contractor shall provide equal employment opportunities to all qualified individuals without regard to race, color, national origin, religion, sex, age or disability.  Contractor shall take all necessary precautions to assure the safety of its employees who are engaged in the performance of the Services and of all equipment and supplies used in connection therewith.  Contractor shall cause its employees and agents to observe the working hours, working rules, security regulations and holiday schedules of Owner while working on the Property, and to perform their respective duties in a manner which does not unreasonably interfere with Owner's business and operations and the operations at the Property.

**Section 4.05.  Subcontractors**.  Unless first approved in writing by the Owner, Contractor shall not, and shall have no authority to, engage any subcontractors, suppliers or materialmen to perform any portion of the Services, and shall instead engage only trained individuals directly employed and supervised by Contractor. Neither Owner's approval of any subcontractors, suppliers or materialmen nor the failure of performance thereof by such parties shall relieve, release or affect in any manner any of Contractor's duties, liabilities or obligations hereunder and Contractor shall at all times be and remain fully liable and responsible for same.

**Section 4.06.  Relationship of the Parties**.  Contractor does hereby acknowledge, represent and warrant that it is an independent contractor.  In no event and under no circumstances shall Contractor, in the performance of its contractual obligations hereunder, be deemed or considered to be acting as a servant, agent, employee co-partner or joint venturer of Owner, nor shall any of the provisions of this agreement by construed in any manner as to make owner liable for the debts or obligations of Contractor.  Contractor agrees that it is solely responsible for all payments due or to become due to all its employees or material suppliers, including the withholding of appropriate taxes and compliance with any and all worker's compensation laws or similar employer obligations or requirements with respect to its employees.  Contractor hereby agrees to indemnify, defend, save and hold harmless Owner and its affiliates, subsidiaries, employees, agents, managing agent, members, and parent corporations of and from any and all liability therefor.

**Section 4.07.  Payment of Taxes and Contributions**.  Contractor shall pay any and all taxes and contributions assessed against Contractor for unemployment insurance, old age retirement benefits, pensions and annuities now imposed, or hereafter imposed by any governmental unit, or labor union, that is measured by wages, salaries or other remuneration paid to persons employed by Contractor in connection with the Services Contractor is required to perform and/or has performed under the terms of this Agreement.

**Section 4.08.  Compliance with Laws and Regulations**.  In performing the Services required under this Agreement, Contractor shall comply with all federal, state, county and municipal laws, statutes, ordinances, rules



and regulations, including without limitation, any licensing, bonding and permit requirements.

**Section 4.09.  Hazardous/Toxic Material**.  Contractor shall be responsible for complying with all applicable Federal, State and local laws, ordinances, rules and regulations pertaining to the use of all hazardous and toxic materials.  Contractor shall identify to Owner in advance of delivery of any toxic substances or hazardous materials incorporated in or associated with the Services provided hereunder and shall advise Owner of all precautions to be taken for their use and disposal.  When applicable, Contractor shall furnish Owner a completed Material Safety Data Sheet for any materials furnished by Contractor hereunder as required by Federal, State or local laws, ordinances, rules or regulations.  Any transportation or other handling of the hazardous materials by Contractor shall be performed in accordance with all applicable Federal, State, and local laws, ordinances, rules and regulations.

**Section 4.10.  Representations, Warranties, and Covenants**.  Contractor covenants, represents and warrants (a) that Contractor is a Other  qualified to do business and, if required by law, duly licensed in the State of Florida , and (b) that the employees and agents of Contractor performing the Services are and, during the term of this Agreement, shall remain fully qualified, licensed as required, and skilled to perform the Services.

ARTICLE V
DEFAULT

**Section 5.01.**  In the event of a default by Contractor, Owner may, in its sole discretion, in addition to any other right it may have at law or in equity: (a) send notice of the default to Contractor and demand strict compliance with the terms of this Agreement; (b) cancel this Agreement upon five (5) days written notice to Contractor; or (c) cure the default, with or without notice to Contractor, and deduct the costs and charges incurred from any payment due at the time of the default or from payment which becomes due.  If no further payment is due, Contractor agrees to immediately, upon presentation of an invoice by Owner, pay all charges incurred hereunder.

ARTICLE VI
AUDIT

**Section 6.01.**  As to all Services for which compensation may include either reimbursement to Contractor for costs or payment based upon quantity of service or products, Owner's duly authorized representatives (including internal auditors) shall have, at all reasonable times, access to and the right to reproduce records, books, documents, files, receipts, vouchers, data stored in computers and memoranda of every description, as well as the right to interview personnel, necessary to audit and verify Contractor's charges to Owner hereunder.  Contractor agrees to preserve and retain records, books, documents, files, receipts, vouchers, data and memoranda related to charges hereunder for a period of five (5) years following the date of final payment for Contractor's services hereunder.  Owner's representatives also shall have sufficient audit access to Contractor's records in the fixed rate areas to satisfy themselves that all Services that are supposed to be included in Contractor's fixed rates are performed.

ARTICLE VII
LIENS AND ENCUMBRANCES

**Section 7.01.**  Contractor agrees to protect Owner from all liens for labor performed, material supplied or used by Contractor and/or any other person in connection with the Services undertaken by Contractor hereunder and



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075

Generated on: March 19, 2020

shall not, at any time during the term of this Agreement, suffer or permit any lien or attachment or encumbrance to be imposed by any person, firm or corporation upon Owner's Property or any improvements thereon, by reason of any claim or demand against Contractor or otherwise.  Contractor further agrees to execute a sworn affidavit respecting the payment and lien releases of all subcontractors, suppliers and materialmen and a release of lien respecting the Services at such time or times and in such form as may be reasonably requested by Owner.  Owner shall have the right, but not the obligation, to cure any liens, attachments or encumbrances in the event Contractor fails to do so and charge Contractor any amount expended curing such items.

ARTICLE VIII
ASSIGNMENTS AND SUBCONTRACTS

**Section 8.01.**  It is expressly understood and agreed that this Agreement is personal to Contractor and was awarded to Contractor based upon its professional skill and knowledge.  Contractor shall have no right, power or authority to assign this Agreement or any portion thereof, either voluntarily or involuntarily, or by operation of law, and Contractor shall not have the right, power or authority to sublet or subcontract the Services to be performed hereunder, or any portion thereof, without Owner's express written approval and consent, in Owner's sole discretion, being first obtained.  Neither approval nor consent by Owner for Contractor to enter into any subcontract or the failure or performance thereof by any such subcontractor shall relieve, release or affect, in any manner, any of Contractor's duties, liabilities, or obligations hereunder, and Contractor shall be and remain liable hereunder to the same extent as if no subcontract had been made or entered into.  Owner may in its sole discretion assign or transfer this Agreement or any rights hereunder.  Except to the extent above indicated, all of the rights, benefits, duties, liabilities and obligations of the parties hereto shall inure to the benefit of and be binding upon their respective successors and assigns.

ARTICLE IX
SUCCESSORS; NON-RECOURSE CONTRACT

**Section 9.01.  Successors and Assigns**.  This Agreement and all the terms and conditions hereof (including, without limitation, any and all hold harmless agreements and indemnifications herein provided) shall inure to the benefit of Owner and its successors and assigns and shall be binding on Contractor and its permitted successors and assigns.

**Section 9.02.  Nonrecourse**.  It is expressly understood and agreed by and between the parties hereto, notwithstanding anything herein contained to the contrary, that no personal recourse shall be had by Contractor (or any person claiming by, through or under Contractor) for the payment or performance of any obligation under, or for any claim based on, this Agreement against Owner or against any principal, partner, affiliate, member, managing agent, director, officer, shareholder, beneficiary, trustee, employee, agent, successor or assign of Owner beyond the interest of Owner in the Property, it being understood that such claimants shall look solely to the interests of Owner in the Property with respect to any and all such claims and that all other personal liability of the above-described persons and entities is hereby expressly waived by Contractor and by Contractor on behalf of all persons claiming by, through and under Contractor.

ARTICLE X
RELEASE, INDEMNIFICATION AND INSURANCE

**Section 10.01.   Release**.  To the extent permitted by applicable law, Contractor agrees to look solely to its insurers and does hereby release and waive any and all rights it has now, or may have in the future have, to recover against Owner and its partners, affiliates, principals, managing agent, members, trustees, beneficiaries, shareholders, directors, officers, employees, agents and servants and the successors and assigns thereof



Audit Trail Serial# 4f7469be934c86dd9071dd5526257b36

Composite Exhibit A

(collectively the "Releasees") for loss of damage to property or personal injury or death (including, but not limited to, claims for damage to property of Contractor and injury to or death of employees of Contractor and claims for contribution or indemnity or for reimbursement of workers' compensation benefits) in any way relating to or resulting from the Services performed or to be performed under or in connection with this Agreement. Contractor hereby waives all rights of subrogation of its insurers with respect to claims against Releasees.

**Section 10.02.  Indemnification**.  To the fullest extent permitted by law, Contractor agrees to indemnify, protect, defend, save, and hold harmless the Releasees from and against any and all claims, actions, liabilities, damages, losses, costs and expenses, including attorney's fees, arising out of or resulting from, directly or indirectly, the performance of Services at the Property by Contractor or Contractor's subcontractors, agents or employees, except to the extent arising from Owner's gross negligence or intentional misconduct. In addition, Contractor agrees to indemnify, protect, defend, save, and hold harmless the Releasees from and against any and all claims, actions, liabilities, damages, losses, costs and expenses arising out of or resulting from Contractor's failure to purchase all insurance coverage required in this Agreement.

**Section 10.03.  Insurance**.  Contractor agrees to carry, at Contractor's sole expense, insurance coverage as outlined in Exhibit D.

The insurance shall be in the name of Contractor, provided, however, that the automobile liability and general liability policy shall name Owner and Owner's agent as an additional insured.  Each of the insurers providing insurance described above shall be licensed to do business in the state where the Property is located and shall be rated at least "A- "XII" by Best's Key Rating Guide.  No policy of insurance required to be carried hereunder shall be cancelable or modified on less than thirty (30) days written notice to Owner.  Certificates evidencing the above stipulated coverage and provisions shall be supplied to Owner by Contractor prior to providing of Services by Contractor and at each insurance policy renewal.  Contractor agrees that the foregoing insurance provisions will remain in effect, without interruption, for the entire time period that Contractor provides Services at the Property.  Contractor agrees that each of the insurance policies described above shall contain appropriate "waiver of subrogation" clauses to any right of subrogation against Owner.  The insurance requirements herein are in addition to and not in substitution of the indemnity provisions of Section 10.02 above.

**Section 10.04. Insurance requirements**.  The subcontractor shall purchase and maintain of the following types of coverage and limits of liability.

Commercial General Liability – Including       $1,000,000 Each Occurrence

Commercial Liability                                    $2,000,000 Aggregate, Per Project

Workers Comp and Employees Liability        $1,000,000 Each Employee

Business Auto, Including Hired and Non-Owned Auto

                                                    $1,000,000 CSL Per Accident

Umbrella Liability                                     $1,000,000

The owner and/or contractor are to be named as additional insured on a primary basis to the Subcontractor's Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Product/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection.



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075                    Generated on: March 19, 2020

ARTICLE XI
NOTICE

**Section 11.01.  Notice Address**.  Any written notice required to be made or to be given by Contractor to Owner shall be sent to Owner's address set forth in Article I and any written notice required or made to be given by Owner to Contractor shall be addressed to Contractor's address set forth in Article I.

**Section 11.02.  Notice Delivery**.  Any and all written notices shall be delivered in person or shall be sent by certified or registered mail, with return receipt requested and shall be deemed effective when delivered, if delivered in person, or three business days after being deposited with the United States Post Office, postage prepaid, and addressed as above provided, if mailed.  Notice may also be given by means of a nationally recognized overnight courier and shall be deemed effective one business day after delivery to such courier.  The parties hereto may, by notice in writing, designate another address to which notice shall be given pursuant to this Agreement.

ARTICLE XII
MISCELLANEOUS

**Section 12.01.  Waiver**.  Any failure of Contractor or its insurer to comply in full with any provisions of this Agreement and/or any failure by Owner to enforce the provisions of this Agreement shall in no way constitute a waiver by Owner of any contractual right hereunder, unless such waiver is in writing and signed by Owner.

**Section 12.02.  Unenforceable**.  In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

**Section 12.03.  Modification**.  This Agreement may only be modified in writing signed by the party to be charged.

**Section 12.04.  Choice of Law**.  The rights and duties arising under this Agreement shall be governed by the laws of the state where the Property is located.  Contractor hereby consents to the venue and jurisdiction of the state and federal courts located in              ,              .

**Section 12.05.  Attorneys' Fees**.  In the event that any action, suit or other proceeding is instituted to remedy, present or obtain relief from a breach of this Agreement, the prevailing party shall recover from the other party all of such prevailing party's attorneys' fees and costs incurred in each and every such action, suit or other proceeding.

**Section 12.06.  Confidential Information**.  Contractor shall not disclose any of Owner's information to which Contractor has access through performance of the Services hereunder to any third party or use such information for any purpose other than the performance of Services hereunder.

**Section 12.07.  Time of the Essence**.  All time limits provided in this Agreement and any exhibit or addendum hereto are of the essence of this Agreement.

**Section 12.08.  Survival**.  Except as expressly provided to the contrary herein, all provisions of this Agreement shall survive the termination or cancellation of this Agreement for any reason.

**Section 12.09.  Entire Agreement**.  All negotiations and agreements are merged herein and there are no



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075                Generated on: March 19, 2020

provisions, covenants or other agreements between the parties other than those contained herein or incorporated herein by reference.  This Agreement is the entire agreement between the parties hereto with respect to the subject matter hereof.

**Section 12.10.  Headings**.  The Article and Section headings used herein are for reference and convenience only and shall not limit or control any term or provision of this Agreement or the interpretation or construction thereof.

**Section 12.11.  Schedules, Attachments or Exhibits**.  All schedules, attachments or exhibits, if any, referred to in or attached to this Agreement are and shall be deemed to be an integral part of this Agreement as if fully set forth herein.

**Section 12.12.  Counterparts**.  This Agreement may be signed in two or more counterparts, each of which shall be treated as an original but which, when taken together, shall constitute one and the same instrument.



Audit Trail Serial# 4f7469be9346686dd9071dd5526257b36

Composite Exhibit A

Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075

**EXHIBIT A**
**SITE PLAN OF PROPERTY**

- CROSS-COUNTY-PLAZA1.docx



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075

Generated on: March 19, 2020

**EXHIBIT B**
**PAYMENT SCHEDULE**

Net 30



Audit Trail Serial# 4f7469be934c86dd9071dd5526257b36

Composite Exhibit A

Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075

Generated on: March 19, 2020

**EXHIBIT C**
**Scope of Services**

See contract

- cross-county-lsp-maint-2020-signed1.pdf



**EXHIBIT D**
**Insurance**

- DWG-COI-CROSS-COUNTY1.pdf



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075                    Generated on: March 19, 2020

**EXHIBIT E**
**W-9**

- fw94.pdf



Document ID: f7d70e7163aae56cd9b682a474b0c99bec29a075                    Generated on: March 19, 2020

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

MADISON PROPERTIES USA LLC,
Managing Agent, on behalf of:

OWNER:   Cross County Owner LLC   CONTRACTOR: DWG Property Services Co., LLC

*Rick Swinarski*                                    *Madison Properties*

X _____              X _____

Signed By Rick Swinarski                    Signed By Madison Properties
Signed On: March 19, 2020                   Signed On: March 20, 2020



Composite Exhibit A

# Signature Certificate

**Document name: Madison Properties - Contract - Rick Swinarski**

🔒 Unique Document ID: F7D70E7163AAE56CD9B682A474B0C99BEC29A075



LEGALLY SIGNED USING
**WP**esignature

Build. Track. Sign Contracts.



Rick Swinarski
Party ID: 98b483ce-507e-4b2f-b118-f9c4c2cda5d1
IP Address: 98.26.115.81
Security Level: E-mail

Digital Signature:
*Rick Swinarski*

**Multi-Factor**
**Digital Fingerprint Checksum**   83d2eae403828212c90f4aa3e6697eec





Madison Properties
Party ID: e1e2d034-dcd3-4f46-b072-ab959029ca32
IP Address: 198.55.44.143
Security Level: E-mail

Digital Signature:
*Madison Properties*

**Multi-Factor**
**Digital Fingerprint Checksum**   86820e998c986e5385f2da554913f2f8



| Timestamp | Audit |
|---|---|
| March 19, 2020 2:03 pm EDT | Madison Properties - Contract - Rick Swinarski Uploaded by Sam Rapaport - maintenance@madisonprop.com IP 108.30.161.187 |
| March 19, 2020 2:03 pm EDT | Document sent for signature to Rick Swinarski - Rick@dwg-ps.com |
| March 19, 2020 4:05 pm EDT | Document viewed by Rick Swinarski - rick@dwg-ps.com IP 174.109.102.222 |
| March 19, 2020 4:08 pm EDT | Document viewed by Rick Swinarski - rick@dwg-ps.com IP 98.26.115.81 |
| March 19, 2020 4:08 pm EDT | Document signed by Rick Swinarski - rick@dwg-ps.com IP 98.26.115.81 |
| March 19, 2020 4:08 pm EDT | Document sent for signature to Madison Properties - docs@madisonprop.com |
| March 20, 2020 11:11 am EDT | Document viewed by Madison Properties - docs@madisonprop.com IP 198.55.44.143 |
| March 20, 2020 11:12 am EDT | Document signed by Madison Properties - docs@madisonprop.com IP 198.55.44.143 |
| March 20, 2020 11:12 am EDT | The document has been signed by all parties and is now closed. |


verified
by approveme

This audit trail report provides a detailed record of the online activity and events recorded for this contract.

Page 17 of 17

Audit Trail Serial# 4f7469be93 Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

Generated on: March 18, 2020

Signed On: https://docs.madisonprop.com/

# Madison Properties - Contract - Rick Swinarski

## SERVICE AGREEMENT

THIS SERVICE AGREEMENT ("Agreement") is made as of March 18, 2020, between the Contractor and the Owner listed below for services to be performed at the Property listed below and as further identified on "Exhibit A" attached hereto.

### ARTICLE I
### AGREEMENT DATA

**PROPERTY:** Coleman Marketplace

**PROPERTY ADDRESS:** 155 Holt Garrison Parkway Danville Virginia 24540

**OWNER:** Coleman Marketplace LLC
(Legal Entity Name)

**MANAGING AGENT:** Madison Properties USA LLC
(Management Company)

**ADDRESS OF MANAGING AGENT:** 3611 14th Avenue, Suite 552, Brooklyn, NY 11218

**CONTRACTOR:** DWG Property Services Co LLC

**CONTRACTOR'S ADDRESS:** PO Box 12073
Durham, NC 27709
United States

**CONTRACTOR'S TELEPHONE NUMBER:** (984) 888-6429

**CONTRACTOR'S REPRESENTATIVE:** Rick Swinarski

**CONTRACTOR'S FEDERAL I.D.  NUMBER:** 823833095

**COMMENCEMENT DATE:** 03/18/2020

**TERMINATION DATE:**      03/18/2021            (subject to earlier termination as hereinafter set forth).



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                    Generated on: March 18, 2020

**PAYMENTS:** Owner shall pay the amount as detailed on Exhibit B attached hereto, in arrears, payable within forty-five (45) days after Owner's receipt of an invoice therefore, together with all other documentation required in Article III below, with any partial, initial or final month prorated, except as otherwise provided as follows:

Net 30

The information in the foregoing Agreement Data is incorporated and made a part of this Agreement, if there is a conflict between this information and the remainder of the Agreement, the foregoing information in this Article I shall control. The amounts to be paid by Owner to Contractor set forth on Exhibit B hereto include any and all labor, materials, supplies, costs and expenses incurred or to be incurred by Contractor in connection with the performance and completion of the Services. Contractor shall not exceed the amounts specified on Exhibit B hereto unless (a) cause is shown to Owner for the extra time and expense required, and (b) such excess amounts are expressly approved in writing in advance by Owner.

ARTICLE II
TERM AND CANCELLATION

**Section 2.01.  Term.**  Unless otherwise canceled pursuant to the terms of this Agreement, the term of this Agreement shall be from the Commencement Date set forth in Article I to the Termination Date set forth in Article I.  Thereafter, until cancelled by either party hereto, this Agreement shall continue and remain in full force and effect on a month-to-month basis.

**Section 2.02.  Cancellation**.  Owner shall have the right, in its sole discretion, to cancel and terminate this Agreement, with or without cause and without cost, payment or penalty, at any time upon five (5) days prior written notice to Contractor.  If this Agreement is cancelled and terminated pursuant to this Section 2.02, Contractor shall be paid for Services satisfactorily performed prior to the effective date of cancellation/termination.

**Section 2.03.  Property Sale**.  In the event the Property is sold or in any way conveyed to new ownership, Owner may, at its election on the effective date of sale: (a) assign this Agreement to the new owner of the Property, or (b) immediately terminate this Agreement without cost, payment or penalty.

ARTICLE III
COMPENSATION

**Section 3.01.  Timing of Payments**.  During the term of this Agreement or until sooner terminated, Owner shall pay Contractor for the Services set forth herein the amount or amounts and at that time or times set forth in Article I.  If no other time for payment is specified in this Agreement, payments shall be made monthly in arrears and within forty-five (45) days after receipt of appropriate billing from Contractor, together with all other documentation required within this Article.  All invoices should be sent to the mailing address as noted in Article I above.

**Section 3.02.  Partial Payment**.  Contractor shall submit monthly invoices to Owner for Services performed in accordance with this Agreement.  Said invoices shall be accompanied by, at Owner's request, the following: (a) an original, executed and unconditional (except for receipt of payment for Services and materials to which such lien waiver relates) Contractor's lien waiver for work performed to date accompanied by Contractor's sworn statement setting forth in detail all subcontractors and material suppliers with whom Contractor has contracted, their addresses, work or materials to be furnished, amounts of the contracts, amounts paid to date, amounts of current payments and balances due; and (b) original, executed and unconditional (except for receipt of payment



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                    Generated on: March 18, 2020

for Services and materials to which such lien waivers relate) lien waivers to date from all subcontractors and material suppliers who performed work for which payment is requested.

**Section 3.03.  Final Payment**.  Upon completion of all Services, Contractor shall submit its request for final payment which shall be accompanied by, at Owner's request, Contractor's final, original, executed and unconditional lien waiver and sworn general contractor's statement and all subcontractors' final, original, executed and unconditional lien waivers not previously provided to Owner.

**Section 3.04.  Contest**.  No payment shall be due and/or payable by Owner hereunder unless and until Contractor complies with the provisions of this Article III.  Notwithstanding anything contained in this Agreement to the contrary, if Owner contests all or any portion of any invoice, Owner shall be required to pay only the portion of such invoice not contested by Owner.  Any contested portion of such invoice shall not be payable by Owner until any disagreement between Owner and Contractor with respect thereto is resolved and a revised invoice is submitted to Owner by Contractor reflecting the appropriate adjustments agreed to, by the parties. Contractor may be notified by the Owner of any contest by email, facsimile or by regular U.S.  Mail.

ARTICLE IV
CONTRACTOR'S DUTIES

**Section 4.01.  General**.  Contractor shall furnish all labor, supplies, materials and equipment to perform the Services at the time or times and as further specified and described in Exhibit C (attached hereto and incorporated by this reference).  The Services shall be performed diligently and in a good, professional and first class manner with good quality supplies, materials, equipment and workmanship.  Contractor warrants to Owner that all Services shall be performed in a safe, good and workmanlike manner, and that the Services, including related materials furnished hereunder, shall conform to all laws, statutes, ordinances, codes, rules and requirements applicable to the Property and/or the Services, and further warrants that the Services shall be delivered free from all liens and encumbrances whatsoever and that use of the Services shall not infringe any patents, copyrights or other proprietary rights.  All warranties shall survive inspection, acceptance and payment.  Services not meeting the warranties shall, at the Owner's option, be performed again by Contractor at no cost to Owner.

**Section 4.02.  Supervision**.  Contractor shall be responsible for the supervision and direction of its employees and any approved subcontractors, suppliers and materialmen performing the Services and shall, if needed or if Owner shall request, provide supervisory personnel on the Property acceptable to Owner to carry out this responsibility.  Periodic inspections will be conducted by any designated supervisor of Contractor to ensure that all Services hereunder are properly performed.  Contractor will inform Owner of the name of such supervisor responsible for the Services and the supervisor shall have the authority to act as Contractor's agent in Contractor's absence.  Contractor agrees to only employ employees with no criminal record and no evidence of illegal drug use.

**Section 4.03.  Equipment**.  Unless otherwise provided in Exhibit C, Contractor shall provide all equipment and supplies necessary and/or appropriate for the performance and completion of the Services in compliance with the terms and provisions of this Agreement.  All such equipment and supplies shall be of first quality only and no additional charge shall be made by Contractor for this requirement.  Contractor shall provide such equipment and supplies as appropriate, in the professional opinion of Contractor, to perform the Services in the most efficient and safest manner possible.  Contractor shall only use the equipment and supplies for their intended uses, and shall discontinue use of any product which is inappropriate for its designated use or as directed by Owner; provided, however, that the right of the Owner to prohibit use of a product shall not relieve Contractor of its requirement to exercise its professional judgment.



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                      Generated on: March 18, 2020

**Section 4.04.  Employees**.  Contractor and Owner agree that Contractor accepts sole liability for compliance with all laws, statutes, ordinances, codes, and governmental rules and regulations related to Contractor's employees and their employment, including, without limitation, such items as workers' compensation insurance coverage, unemployment insurance, social security tax withholdings, withholding for any and all government taxes, OSHA requirements, ERISA requirements, Fair Labor Standards Act requirements, work safety rules, etc., as such regulations may apply to Contractor's employees used in providing the Services at the Property. Contractor will remove from its work force assigned to the Property any employees whose presence at the Property is deemed to be detrimental to the best interests of the Property.  Contractor agrees at all times to remain in strict compliance with all terms, provisions, regulations and rulings relative to the Immigrations Reform and Control Act of 1986 ("IRCA"), as may be amended.  All employees of Contractor assigned to the Property will have had their identity and eligibility for work within the United States properly verified.  Within three (3) days of receipt of written request from Owner, Contractor shall provide Owner with copies of the I-9 form or such other documentation as may be appropriate to satisfy Owner as to Contractor's compliance with IRCA.  Contractor shall comply with all applicable governmental regulations and laws in the hiring, supervision and termination of its employees.  Without limiting the foregoing, Contractor shall provide equal employment opportunities to all qualified individuals without regard to race, color, national origin, religion, sex, age or disability.  Contractor shall take all necessary precautions to assure the safety of its employees who are engaged in the performance of the Services and of all equipment and supplies used in connection therewith.  Contractor shall cause its employees and agents to observe the working hours, working rules, security regulations and holiday schedules of Owner while working on the Property, and to perform their respective duties in a manner which does not unreasonably interfere with Owner's business and operations and the operations at the Property.

**Section 4.05.  Subcontractors**.  Unless first approved in writing by the Owner, Contractor shall not, and shall have no authority to, engage any subcontractors, suppliers or materialmen to perform any portion of the Services, and shall instead engage only trained individuals directly employed and supervised by Contractor. Neither Owner's approval of any subcontractors, suppliers or materialmen nor the failure of performance thereof by such parties shall relieve, release or affect in any manner any of Contractor's duties, liabilities or obligations hereunder and Contractor shall at all times be and remain fully liable and responsible for same.

**Section 4.06.  Relationship of the Parties**.  Contractor does hereby acknowledge, represent and warrant that it is an independent contractor.  In no event and under no circumstances shall Contractor, in the performance of its contractual obligations hereunder, be deemed or considered to be acting as a servant, agent, employee co-partner or joint venturer of Owner, nor shall any of the provisions of this agreement by construed in any manner as to make owner liable for the debts or obligations of Contractor.  Contractor agrees that it is solely responsible for all payments due or to become due to all its employees or material suppliers, including the withholding of appropriate taxes and compliance with any and all worker's compensation laws or similar employer obligations or requirements with respect to its employees.  Contractor hereby agrees to indemnify, defend, save and hold harmless Owner and its affiliates, subsidiaries, employees, agents, managing agent, members, and parent corporations of and from any and all liability therefor.

**Section 4.07.  Payment of Taxes and Contributions**.  Contractor shall pay any and all taxes and contributions assessed against Contractor for unemployment insurance, old age retirement benefits, pensions and annuities now imposed, or hereafter imposed by any governmental unit, or labor union, that is measured by wages, salaries or other remuneration paid to persons employed by Contractor in connection with the Services Contractor is required to perform and/or has performed under the terms of this Agreement.

**Section 4.08.  Compliance with Laws and Regulations**.  In performing the Services required under this Agreement, Contractor shall comply with all federal, state, county and municipal laws, statutes, ordinances, rules



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                    Generated on: March 18, 2020

and regulations, including without limitation, any licensing, bonding and permit requirements.

**Section 4.09.  Hazardous/Toxic Material**.  Contractor shall be responsible for complying with all applicable Federal, State and local laws, ordinances, rules and regulations pertaining to the use of all hazardous and toxic materials.  Contractor shall identify to Owner in advance of delivery of any toxic substances or hazardous materials incorporated in or associated with the Services provided hereunder and shall advise Owner of all precautions to be taken for their use and disposal.  When applicable, Contractor shall furnish Owner a completed Material Safety Data Sheet for any materials furnished by Contractor hereunder as required by Federal, State or local laws, ordinances, rules or regulations.  Any transportation or other handling of the hazardous materials by Contractor shall be performed in accordance with all applicable Federal, State, and local laws, ordinances, rules and regulations.

**Section 4.10.  Representations, Warranties, and Covenants**.  Contractor covenants, represents and warrants (a) that Contractor is a Other  qualified to do business and, if required by law, duly licensed in the State of Virginia , and (b) that the employees and agents of Contractor performing the Services are and, during the term of this Agreement, shall remain fully qualified, licensed as required, and skilled to perform the Services.

ARTICLE V
DEFAULT

**Section 5.01.**  In the event of a default by Contractor, Owner may, in its sole discretion, in addition to any other right it may have at law or in equity: (a) send notice of the default to Contractor and demand strict compliance with the terms of this Agreement; (b) cancel this Agreement upon five (5) days written notice to Contractor; or (c) cure the default, with or without notice to Contractor, and deduct the costs and charges incurred from any payment due at the time of the default or from payment which becomes due.  If no further payment is due, Contractor agrees to immediately, upon presentation of an invoice by Owner, pay all charges incurred hereunder.

ARTICLE VI
AUDIT

**Section 6.01.**  As to all Services for which compensation may include either reimbursement to Contractor for costs or payment based upon quantity of service or products, Owner's duly authorized representatives (including internal auditors) shall have, at all reasonable times, access to and the right to reproduce records, books, documents, files, receipts, vouchers, data stored in computers and memoranda of every description, as well as the right to interview personnel, necessary to audit and verify Contractor's charges to Owner hereunder. Contractor agrees to preserve and retain records, books, documents, files, receipts, vouchers, data and memoranda related to charges hereunder for a period of five (5) years following the date of final payment for Contractor's services hereunder.  Owner's representatives also shall have sufficient audit access to Contractor's records in the fixed rate areas to satisfy themselves that all Services that are supposed to be included in Contractor's fixed rates are performed.

ARTICLE VII
LIENS AND ENCUMBRANCES

**Section 7.01.**  Contractor agrees to protect Owner from all liens for labor performed, material supplied or used by Contractor and/or any other person in connection with the Services undertaken by Contractor hereunder and



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                    Generated on: March 18, 2020

shall not, at any time during the term of this Agreement, suffer or permit any lien or attachment or encumbrance to be imposed by any person, firm or corporation upon Owner's Property or any improvements thereon, by reason of any claim or demand against Contractor or otherwise.  Contractor further agrees to execute a sworn affidavit respecting the payment and lien releases of all subcontractors, suppliers and materialmen and a release of lien respecting the Services at such time or times and in such form as may be reasonably requested by Owner.  Owner shall have the right, but not the obligation, to cure any liens, attachments or encumbrances in the event Contractor fails to do so and charge Contractor any amount expended curing such items.

ARTICLE VIII
ASSIGNMENTS AND SUBCONTRACTS

**Section 8.01.**  It is expressly understood and agreed that this Agreement is personal to Contractor and was awarded to Contractor based upon its professional skill and knowledge.  Contractor shall have no right, power or authority to assign this Agreement or any portion thereof, either voluntarily or involuntarily, or by operation of law, and Contractor shall not have the right, power or authority to sublet or subcontract the Services to be performed hereunder, or any portion thereof, without Owner's express written approval and consent, in Owner's sole discretion, being first obtained.  Neither approval nor consent by Owner for Contractor to enter into any subcontract or the failure or performance thereof by any such subcontractor shall relieve, release or affect, in any manner, any of Contractor's duties, liabilities, or obligations hereunder, and Contractor shall be and remain liable hereunder to the same extent as if no subcontract had been made or entered into.  Owner may in its sole discretion assign or transfer this Agreement or any rights hereunder.  Except to the extent above indicated, all of the rights, benefits, duties, liabilities and obligations of the parties hereto shall inure to the benefit of and be binding upon their respective successors and assigns.

ARTICLE IX
SUCCESSORS; NON-RECOURSE CONTRACT

**Section 9.01.  Successors and Assigns**.  This Agreement and all the terms and conditions hereof (including, without limitation, any and all hold harmless agreements and indemnifications herein provided) shall inure to the benefit of Owner and its successors and assigns and shall be binding on Contractor and its permitted successors and assigns.

**Section 9.02.  Nonrecourse**.  It is expressly understood and agreed by and between the parties hereto, notwithstanding anything herein contained to the contrary, that no personal recourse shall be had by Contractor (or any person claiming by, through or under Contractor) for the payment or performance of any obligation under, or for any claim based on, this Agreement against Owner or against any principal, partner, affiliate, member, managing agent, director, officer, shareholder, beneficiary, trustee, employee, agent, successor or assign of Owner beyond the interest of Owner in the Property, it being understood that such claimants shall look solely to the interests of Owner in the Property with respect to any and all such claims and that all other personal liability of the above-described persons and entities is hereby expressly waived by Contractor and by Contractor on behalf of all persons claiming by, through and under Contractor.

ARTICLE X
RELEASE, INDEMNIFICATION AND INSURANCE

**Section 10.01.  Release**.  To the extent permitted by applicable law, Contractor agrees to look solely to its insurers and does hereby release and waive any and all rights it has now, or may have in the future have, to recover against Owner and its partners, affiliates, principals, managing agent, members, trustees, beneficiaries, shareholders, directors, officers, employees, agents and servants and the successors and assigns thereof



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e                Generated on: March 18, 2020

(collectively the "Releasees") for loss of damage to property or personal injury or death (including, but not limited to, claims for damage to property of Contractor and injury to or death of employees of Contractor and claims for contribution or indemnity or for reimbursement of workers' compensation benefits) in any way relating to or resulting from the Services performed or to be performed under or in connection with this Agreement. Contractor hereby waives all rights of subrogation of its insurers with respect to claims against Releasees.

**Section 10.02.  Indemnification**.  To the fullest extent permitted by law, Contractor agrees to indemnify, protect, defend, save, and hold harmless the Releasees from and against any and all claims, actions, liabilities, damages, losses, costs and expenses, including attorney's fees, arising out of or resulting from, directly or indirectly, the performance of Services at the Property by Contractor or Contractor's subcontractors, agents or employees, except to the extent arising from Owner's gross negligence or intentional misconduct.  In addition, Contractor agrees to indemnify, protect, defend, save, and hold harmless the Releasees from and against any and all claims, actions, liabilities, damages, losses, costs and expenses arising out of or resulting from Contractor's failure to purchase all insurance coverage required in this Agreement.

**Section 10.03.  Insurance**.  Contractor agrees to carry, at Contractor's sole expense, insurance coverage as outlined in Exhibit D.

The insurance shall be in the name of Contractor, provided, however, that the automobile liability and general liability policy shall name Owner and Owner's agent as an additional insured.  Each of the insurers providing insurance described above shall be licensed to do business in the state where the Property is located and shall be rated at least "A- "XII" by Best's Key Rating Guide.  No policy of insurance required to be carried hereunder shall be cancelable or modified on less than thirty (30) days written notice to Owner.  Certificates evidencing the above stipulated coverage and provisions shall be supplied to Owner by Contractor prior to providing of Services by Contractor and at each insurance policy renewal.  Contractor agrees that the foregoing insurance provisions will remain in effect, without interruption, for the entire time period that Contractor provides Services at the Property.  Contractor agrees that each of the insurance policies described above shall contain appropriate "waiver of subrogation" clauses to any right of subrogation against Owner.  The insurance requirements herein are in addition to and not in substitution of the indemnity provisions of Section 10.02 above.

**Section 10.04. Insurance requirements**.  The subcontractor shall purchase and maintain of the following types of coverage and limits of liability.

Commercial General Liability – Including          $1,000,000 Each Occurrence

Commercial Liability                                        $2,000,000 Aggregate, Per Project

Workers Comp and Employees Liability          $1,000,000 Each Employee

Business Auto, Including Hired and Non-Owned Auto

                                                                 $1,000,000 CSL Per Accident

Umbrella Liability                                            $1,000,000

The owner and/or contractor are to be named as additional insured on a primary basis to the Subcontractor's Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Product/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection.



Audit Trail Serial# 83d0ead42e96fa1fc7d03b9bb86091af
Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

ARTICLE XI
NOTICE

**Section 11.01.  Notice Address**.  Any written notice required to be made or to be given by Contractor to Owner shall be sent to Owner's address set forth in Article I and any written notice required or made to be given by Owner to Contractor shall be addressed to Contractor's address set forth in Article I.

**Section 11.02.  Notice Delivery**.  Any and all written notices shall be delivered in person or shall be sent by certified or registered mail, with return receipt requested and shall be deemed effective when delivered, if delivered in person, or three business days after being deposited with the United States Post Office, postage prepaid, and addressed as above provided, if mailed.  Notice may also be given by means of a nationally recognized overnight courier and shall be deemed effective one business day after delivery to such courier.  The parties hereto may, by notice in writing, designate another address to which notice shall be given pursuant to this Agreement.

ARTICLE XII
MISCELLANEOUS

**Section 12.01.  Waiver**.  Any failure of Contractor or its insurer to comply in full with any provisions of this Agreement and/or any failure by Owner to enforce the provisions of this Agreement shall in no way constitute a waiver by Owner of any contractual right hereunder, unless such waiver is in writing and signed by Owner.

**Section 12.02.  Unenforceable**.  In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

**Section 12.03.  Modification**.  This Agreement may only be modified in writing signed by the party to be charged.

**Section 12.04.  Choice of Law**.  The rights and duties arising under this Agreement shall be governed by the laws of the state where the Property is located.  Contractor hereby consents to the venue and jurisdiction of the state and federal courts located in                    ,              .

**Section 12.05.  Attorneys' Fees**.  In the event that any action, suit or other proceeding is instituted to remedy, present or obtain relief from a breach of this Agreement, the prevailing party shall recover from the other party all of such prevailing party's attorneys' fees and costs incurred in each and every such action, suit or other proceeding.

**Section 12.06.  Confidential Information**.  Contractor shall not disclose any of Owner's information to which Contractor has access through performance of the Services hereunder to any third party or use such information for any purpose other than the performance of Services hereunder.

**Section 12.07.  Time of the Essence**.  All time limits provided in this Agreement and any exhibit or addendum hereto are of the essence of this Agreement.

**Section 12.08.  Survival**.  Except as expressly provided to the contrary herein, all provisions of this Agreement shall survive the termination or cancellation of this Agreement for any reason.

**Section 12.09.  Entire Agreement**.  All negotiations and agreements are merged herein and there are no



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

Generated on: March 18, 2020

provisions, covenants or other agreements between the parties other than those contained herein or incorporated herein by reference.  This Agreement is the entire agreement between the parties hereto with respect to the subject matter hereof.

**Section 12.10.  Headings**.  The Article and Section headings used herein are for reference and convenience only and shall not limit or control any term or provision of this Agreement or the interpretation or construction thereof.

**Section 12.11.  Schedules, Attachments or Exhibits**.  All schedules, attachments or exhibits, if any, referred to in or attached to this Agreement are and shall be deemed to be an integral part of this Agreement as if fully set forth herein.

**Section 12.12.  Counterparts**.  This Agreement may be signed in two or more counterparts, each of which shall be treated as an original but which, when taken together, shall constitute one and the same instrument.



Audit Trail Serial# 83d0ead42e96fa1fc7d03b9bb86091af

Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

**EXHIBIT A**
**SITE PLAN OF PROPERTY**

- COLEMAN-MARKETPLACE.docx



Audit Trail Serial# 83d0ead43e96fa1fc7d03b90b86991af

Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

Generated on: March 18, 2020

**EXHIBIT B**
**PAYMENT SCHEDULE**

Net 30



Audit Trail Serial# 83d0ead42e96fa1fc7d02b9bb86091af

Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e Generated on: March 18, 2020

**EXHIBIT C**
**Scope of Services**

See contract

- COLEMAN-MARKET-2020-LSP-MAINT.-2-signed.pdf



Composite Exhibit A

Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

Generated on: March 18, 2020

**EXHIBIT D**
**Insurance**

- Coleman-Marketplace-2020.pdf



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

**EXHIBIT E**
**W-9**

- fw9.pdf



Document ID: 53b5a9048c4e6eb29c6e807715b0ec7c7fee3f3e

Generated on: March 18, 2020

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

MADISON PROPERTIES USA LLC,
Managing Agent, on behalf of:

OWNER:   Coleman Marketplace LLC   CONTRACTOR: DWG Property Services Co LLC

*Rick Swinarski*                 *Madison Properties*

Signed By Rick Swinarski              Signed By Madison Properties
Signed On: March 18, 2020            Signed On: March 19, 2020



Audit Trail Serial# 83d0ead42e96fa1fc7d03b9bb86891af
Composite Exhibit A

# Signature Certificate

Document name: Madison Properties - Contract - Rick Swinarski

🔒Unique Document ID: 53B5A9048C4E6EB29C6E807715B0EC7C7FEE3F3E



LEGALLY SIGNED USING
**WP**esignature

Build. Track. Sign Contracts.



Rick Swinarski
Party ID: 98b483ce-507e-4b2f-b118-f9c4c2cda5d1
IP Address: 98.26.115.81
Security Level: E-mail

Digital Signature:
*Rick Swinarski*

Multi-Factor
**Digital Fingerprint Checksum**   **371b381b03d1d5af21d920d0fb1c61b4**





Madison Properties
Party ID: e1e2d034-dcd3-4f46-b072-ab959029ca32
IP Address: 198.55.44.143
Security Level: E-mail

Digital Signature:
*Madison Properties*

Multi-Factor
**Digital Fingerprint Checksum**   **d070b3af30a96e6021b54b065d72050e**



| Timestamp | Audit |
|---|---|
| March 18, 2020 4:49 pm EDT | Madison Properties - Contract - Rick Swinarski Uploaded by Sam Rapaport - maintenance@madisonprop.com IP 108.30.161.187 |
| March 18, 2020 4:49 pm EDT | Document sent for signature to Rick Swinarski - Rick@dwg-ps.com |
| March 18, 2020 4:50 pm EDT | Document viewed by Rick Swinarski - rick@dwg-ps.com IP 98.26.115.81 |
| March 18, 2020 4:51 pm EDT | Document viewed by Rick Swinarski - rick@dwg-ps.com IP 98.26.115.81 |
| March 18, 2020 4:52 pm EDT | Document signed by Rick Swinarski - rick@dwg-ps.com IP 98.26.115.81 |
| March 18, 2020 4:52 pm EDT | Document sent for signature to Madison Properties - docs@madisonprop.com |
| March 19, 2020 9:51 am EDT | Document viewed by Madison Properties - docs@madisonprop.com IP 198.55.44.143 |
| March 19, 2020 9:52 am EDT | Document signed by Madison Properties - docs@madisonprop.com IP 198.55.44.143 |
| March 19, 2020 9:52 am EDT | The document has been signed by all parties and is now closed. |



verified
by approveme



This audit trail report provides a detailed record of the online activity and events recorded for this contract.

Page 17 of 17

Audit Trail Serial# 83d0ecd43e36fa1f67f03b9b380091af

Composite Exhibit A



## Property Services CO.LLC

12-15-2019

Pinny Taub Maintenance Director
3611 14th Ave. Suite 420 Brooklyn, NY 11218
T: 212.596.8200 Ext. 212 | F: 212.596.8201 | C: 718.207.2183
E: pinny@madisonprop.com | W: www.madisonprop.com

RE: REGENCY SQUARE (NEW SWEEPING & PORTERING) CONTRACT

The party of the DWG-Property Services Co. LLCs proposes to furnish all materials and labor to sweep
the parking lot at Regency Square according to the specifications listed below

### PARKING LOT SWEEPING & PORTER

- Lot services shall be taken place one evening of every week throughout the calendar year.
- Clean up trash / litter will take place in parking lot, curb lines, corners
- Total parking areas are to be swept.
- At each visit, all parking lot corners including store entrance sidewalks will
  Be handpicked for larger items and blown for cigarette butts and other smaller litter, taking care
  not to be blown into landscaping
- Power Sweeping will be performed between the hours of 9:00pm and 6:00am, or as permitted
  by local ordinances. Supplier shall assume full responsibility for determining permissible hours
  from governing bodies and complying with the same
- A powered lot sweeping machine must only be used when the parking lot surface is free of ice
  and snow, when the machine cannot be used due to in climate weather, litter will be
  handpicked or blown from the parking lot, curb lines and entrance and sidewalks and will be
  disposed of site
- All debris collected will be disposed of in accordance with state and federal regulations
- Every effort will be made to utilize a power sweeping machine, however in instances when local
  municipalities do not allow the use of these types of Machines, hand blowing will be performed
  per the same standards as stated above
- Large bulk debris will be removed as needed, when needed DWG-PS will take pictures from
  prior removing and after removal and speak to property manager to receive approval for
  additional billing.
- Hand pick dry land scape areas for larger and smaller debris

DWG-PROPERTY SERVICES CO.LLC
P.O.Box 12073, Durham North Carolina 27709
919.794.5948(ph.) 1.877.904.8799(fax)
www.dwg-ps.com

Composite Exhibit A



# Property Services CO.LLC

- Wipe off trash can lid and sides. Remove gum from cans
- Empty ash trays and refill with sand
- Dust cobwebs from under canopy ceiling and window frames
- Wet wipe vacant windowsills
- Sweep out doorways of vacant unit & hydrate toilets, sinks and drains once a month and twice during summer months
- Clean exterior windows of vacant units once a month
- Police building, property and vacant units for maintenance and security concerns.
- <u>Includes 7 days sweeping and 7 days porting</u>

Monthly service for sweeping property
**7 days per week: $ 1333.00 per month /**      **$43.82 per day**

Monthly service for portering property
**7 days per week $1300.00 per month /**      **$ 42.73 per day**

**Grand total per month  $ 2633.00**      **$ 86.56 per day**

## <u>Terms</u>
ALL PAYMENTS ARE DUE NET 45 DAYS, IF FOR ANY REASON PAYMENT WILL BE LATE OWNER SHALL NOTIFY DWG-PS AND MAKE PAYMENT ARANGEMENTS TO BE MADE CURRENT. IF NO CONTACT IS MADE, DWG-PS HAS THE RIGHT TO TERMINATE ALL SERVICE UNTIL MADE CURRENT.

*D. Zieg*
_____
Pinny Taub Maintenance Director

*Rick Swinarski*
_____
DWG-Property Service CO. LLC

12/16/19
_____
Date

12-15-2019
_____
Date

START DATE  12/16/2019

DWG-PROPERTY SERVICES CO.LLC
P.O.Box 12073, Durham North Carolina 27709
919.794.5948(ph.) 1.877.904.8799(fax)
www.dwg-ps.com

Composite Exhibit A

**Accounts Receivable Trial Balance**
**All Open Invoices as of 12/1/2020**

**DWG Property**

| Customer/ Invoice Number | Invoice | Due | Discount | Invoice Amount | Discount Amount | Invoice Balance | Type | Date | Amount |
|---|---|---|---|---|---|---|---|---|---|
| **MADCCP Cross County Owner LLC** | | | | | | | | | |
| 0031072-IN | 9/9/2019 | 10/9/2019 | | 425.00 | 0.00 | 425.00 | INV | 9/13/2019 | 425.00 |
| 0047020-IN | 12/27/2019 | 1/26/2020 | | 220.00 | 0.00 | 220.00 | INV | 12/30/2019 | 220.00 |
| 0047024-IN | 12/27/2019 | 1/26/2020 | | 595.00 | 0.00 | 461.00 | INV | 12/30/2019 | 595.00 |
| | | | | | | | PAY | 11/17/2020 | 134.00- |
| 0047027-IN | 12/27/2019 | 1/26/2020 | | 2,460.00 | 0.00 | 2,460.00 | INV | 12/30/2019 | 2,460.00 |
| 0047482-IN | 1/17/2020 | 2/16/2020 | | 325.00 | 0.00 | 325.00 | INV | 1/24/2020 | 325.00 |
| 0047489-IN | 1/24/2020 | 2/23/2020 | | 1,667.00 | 0.00 | 1,667.00 | INV | 1/28/2020 | 1,667.00 |
| 0048479-IN | 1/31/2020 | 3/1/2020 | | 1,605.42 | 0.00 | 1,605.42 | INV | 2/5/2020 | 1,605.42 |
| 0048480-IN | 1/31/2020 | 3/1/2020 | | 525.00 | 0.00 | 525.00 | INV | 2/5/2020 | 525.00 |
| 0048534-IN | 2/7/2020 | 3/8/2020 | | 240.00 | 0.00 | 240.00 | INV | 2/10/2020 | 240.00 |
| 0050367-IN | 2/28/2020 | 3/29/2020 | | 5,460.00 | 0.00 | 5,460.00 | INV | 3/2/2020 | 5,460.00 |
| 0051480-IN | 3/13/2020 | 4/12/2020 | | 325.00 | 0.00 | 325.00 | INV | 3/16/2020 | 325.00 |
| | | | | | | | ADJ | 5/20/2020 | 325.00- |
| | | | | | | | ADJ | 8/5/2020 | 325.00 |
| | | **Customer MADCCP Totals:** | | 13,847.42 | 0.00 | 13,713.42 | | | 13,713.42 |
| | | | | | | | | | |
| **MADCMP Coleman Marketplace LLC** | | | | | | | | | |
| 0043875-IN | 5/20/2020 | 6/19/2020 | | 8,162.00 | 0.00 | 8,162.00 | INV | 5/20/2020 | 8,162.00 |
| 0047045-IN | 5/20/2020 | 6/19/2020 | | 8,162.00 | 0.00 | 8,162.00 | INV | 5/20/2020 | 8,162.00 |
| | | | | | | | PAY | 5/20/2020 | 8,162.00- |
| | | | | | | | PAY | 5/20/2020 | 8,162.00 |
| 0056610-IN | 7/2/2020 | 8/1/2020 | | 1,350.00 | 0.00 | 1,350.00- | INV | 7/7/2020 | 2,700.00 |
| | | | | | | | ADJ | 7/24/2020 | 1,350.00- |
| | | | | | | | PAY | 7/29/2020 | 2,700.00- |
| 0056611-IN | 7/2/2020 | 8/1/2020 | | 1,875.00 | 0.00 | 1,875.00- | INV | 7/7/2020 | 3,750.00 |
| | | | | | | | ADJ | 7/24/2020 | 1,875.00- |
| | | | | | | | PAY | 7/29/2020 | 3,750.00- |
| 0058732-IN | 10/15/2020 | 11/14/2020 | | 2,700.00 | 0.00 | 2,700.00 | INV | 10/16/2020 | 2,700.00 |
| | | **Customer MADCMP Totals:** | | 22,249.00 | 0.00 | 15,799.00 | | | 15,799.00 |
| | | | | | | | | | |
| **MADPRO Madison Properties USA LLC** | | | | | | | | | |
| 0031085-IN | 9/9/2019 | 10/9/2019 | | 465.00 | 0.00 | 465.00 | INV | 9/13/2019 | 465.00 |
| 0033445-IN | 9/25/2019 | 10/25/2019 | | 410.00 | 0.00 | 410.00 | INV | 9/30/2019 | 410.00 |
| 0040590-IN | 11/1/2019 | 12/1/2019 | | 146.25 | 0.00 | 146.25 | INV | 11/1/2019 | 146.25 |
| 0040591-IN | 11/1/2019 | 12/1/2019 | | 325.00 | 0.00 | 325.00 | INV | 11/1/2019 | 325.00 |
| 0044938-IN | 12/20/2019 | 1/19/2020 | | 1,300.00 | 0.00 | 1,300.00 | INV | 12/23/2019 | 1,300.00 |
| 0047021-IN | 12/27/2019 | 1/26/2020 | | 475.00 | 0.00 | 475.00 | INV | 12/30/2019 | 475.00 |
| 0047022-IN | 12/27/2019 | 1/26/2020 | | 225.00 | 0.00 | 225.00 | INV | 12/30/2019 | 225.00 |
| 0047025-IN | 12/27/2019 | 1/26/2020 | | 200.00 | 0.00 | 200.00 | INV | 12/30/2019 | 200.00 |
| 0047063-IN | 1/3/2020 | 2/2/2020 | | 45,170.00 | 0.00 | 45,170.00 | INV | 1/8/2020 | 45,170.00 |

Exhibit B

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0047064-IN | 1/3/2020 | 2/2/2020 | 3,700.00 | 0.00 | 3,700.00 | INV 1/8/2020 | 3,700.00 |
| 0047065-IN | 1/3/2020 | 2/2/2020 | 2,685.00 | 0.00 | 2,685.00 | INV 1/8/2020 | 2,685.00 |
| 0048484-IN | 1/31/2020 | 3/1/2020 | 300.00 | 0.00 | 300.00 | INV 2/5/2020 | 300.00 |
| 0048486-IN | 1/31/2020 | 3/1/2020 | 450.00 | 0.00 | 450.00 | INV 2/5/2020 | 450.00 |
| | **Customer MADPRO Totals:** | | 55,851.25 | 0.00 | 55,851.25 | | 55,851.25 |
| | **Report Totals:** | | 91,947.67 | 0.00 | 85,363.67 | | 85,363.67 |
| | **Number of Customers: 21** | | | | | | |

Exhibit B